**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GEOTAG, INC.,<br><br>                Plaintiff,<br><br>v.<br><br>CLASSIFIED VENTURES, LLC,<br><br>                Defendant. | Civil Action No.: 1:13-cv-00295<br><br>Honorable John J. Tharp, Jr. |

**CLASSIFIED VENTURES' OPPOSITION TO GEOTAG, INC.'S MOTION TO STRIKE
DEFENDANT'S FINAL INVALIDITY CONTENTIONS**

Defendant Classified Ventures, LLC ("Classified") files this opposition to Geotag, Inc.'s ("GeoTag") motion to strike Classified's Final Invalidity and Unenforceability Contentions. (the "GeoTag Mot."). GeoTag argues Classified exceeded the number of allowed prior art "references" under the Local Patent Rules. Classified's invalidity contentions identified 25 bases for invalidity of the asserted claims of the patent-in-suit; each of the 25 bases for invalidity comprises either a printed publication or a prior art system. The prior art systems are instances of public use or knowledge by others in the form of instrumentalities that were in actual operation and demonstrated the features claimed by GeoTag's patent. Classified identified numerous documents for some of these systems that it intends to rely on to show the elements of its invalidity defense including whether the prior art system demonstrated the claimed features and that it was in public use during the prior art period. For one system, the NYNEX Interactive Yellow Pages system, Classified also relies on these documents to show that predecessor systems either already included claimed features or were adapted to include them before GeoTag's date of invention.

GeoTag objects to Classified's reliance on multiple documents for five of the prior art systems, and argues that each documentary piece of evidence that Classified has collected for these systems should count separately as its own "reference" under LPR 3.1, which limits the number of prior art references to 25 total. As explained below, GeoTag's reading of LPR 3.1 is inconsistent with the way this issue has been treated by other Districts with local patent rules limiting prior art, and would unfairly deprive Classified of an opportunity to rely on these systems as prior art.

If GeoTag's position is credited, then the ability of defendants in patent infringement suits to assert the defense of invalidity based on prior art systems would be limited based on factors outside their control, namely the types of documents available describing those systems. GeoTag should not be heard to argue that it would be unduly burdensome for it to respond to Classified's invalidity charts on these systems after it served infringement charts of its own on Classified totaling 591 pages with citations to approximately 3,500 unique source code files asserting 17 claims of the patent-in-suit. Classified is required to respond to these charts under the Local Patent Rules even though they are extensive and assert a number of patent claims in excess of what could reasonably be asserted at trial.

GeoTag argues it would be unduly burdensome to respond to Classified's charts on these five prior art systems, but it has already served responsive claim charts to each of those systems when it served its Initial Validity Contentions on November 25, 2013. For example, Classified's Initial Validity Contentions contained an identical chart to the NYNEX chart at issue, with all the same supporting documents. GeoTag states no reason why it was able to respond to the chart then, but is unable to do so now.

## I. LEGAL AUTHORITY

Use of systems qualify as prior art pursuant to 35 U.S.C. §§ 102(a) and 102(b):

> A person shall be entitled to a patent unless –
> (a) the invention was known or used by others in this country . . . or
> (b) the invention was . . . in public use . . . in this country, more than one year prior to the date of the application for patent[.]

Although GeoTag has not cited any authority from this District interpreting the prior art limiting requirement of LPR 3.1, and Classified is aware of none, other Districts with similar local rules or that have entered orders limiting the number of prior art references that expressly deal with the manner of counting documents supporting a prior art system with respect to a total limit on "references." *See, e.g.*, *Thinkoptics, Inc. v. Nintendo of Am., Inc.*, 2013 WL 5934471, at *1 n.1 (E.D. Tex. Sept. 11, 2013) (limiting number of prior art references, and stating "[f]or purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference"); *Good Techs. Corp., et al. v. Mobileiron, Inc.*, Case C-12-05826, (N.D. Cal. Sept. 27, 2013), at 3 n.3 (same) (Exh. A); *Smartflash LLC, et al. v. Apple, Inc., et al.*, Case No. 6:13-cv-00447, at 2 n.1, (E.D. Tex. Dec. 6, 2013) (same) (Exh. B); *In re Transdata, Inc. Smart Meters Patent Litig.*, Case No. 12-ml-2309, at 1 (W.D. Ok. Jan. 29, 2014) (same) (Exh. C); *SynQor, Inc. v. Cisco Systems, Inc. et al.*, Case 2:11-cv-00054, at 1-2 (E.D. Tex. Jan. 27, 2014) (same) (Exh. D).

Courts regularly allow parties asserting prior public use as an invalidating reference to a patent claim to rely on a constellation of documents to show the operation of the system even though none of the documents in isolation show all claimed features. *See, e.g.*, *SP Techs., LLC v. Garmin Int'l, Inc. et al.*, Case No. 1:08-cv-03248, at 6 n.1 (N.D. Ill. July 7, 2010) (Exh. E) (rejecting plaintiff's argument that "Defendants have impermissibly combined references in an attempt to prove anticipation" over a prior art system, and stating "[s]ubmitting multiple pieces of evidence to show the workings of a single device, though, is not an impermissible combination") (citing *Engate, Inc. v. Esquire Deposition Services*, LLC, 331 F. Supp. 2d. 673,

688 (N.D. Ill 2004) (rejecting plaintiff's argument that documents supporting prior art systems must each disclose all claimed elements, and stating "[t]he Court can rely on several sources to describe all the technological elements available . . . that when used together constituted functionalities claimed in [plaintiff's] patents")); *Ductcap Prods., Inc. v. J&S Fabrication, et al.*, Case No. 2:10-cv-00100, p. 9 (E.D. Wisc. Feb. 15, 2013) (Exh. F) (invalidating patent claims over prior art system relying on multiple documents including testimony and business records).

Finally, the Federal Circuit Advisory Council released a model order titled "A Model Order Limiting Excess Patent Claims and Prior Art" last year that addresses the present issue, stating "[f]or the purposes of this Order, a prior art instrumentality (such as a device or process) and associated references that describe that instrumentality shall count as one reference." (Exh. G, n.2). Although the Federal Circuit website removed the model order from its website, stating "the court has not sponsored or endorsed the orders," District Courts nonetheless often adopt the language interpreting the counting of prior art references. *See, e.g.*, *Thinkoptics*, 2013 WL 5934471, at *1; *Good Techs. Corp.* (Exh. A), at 3.

**II.     ARGUMENT**

    **A.     NYNEX system**

Classified has cited 25 documents in support of its contention that the NYNEX Interactive Yellow Pages system invalidates the asserted claims of GeoTag's patent. GeoTag's argument focuses on the number of separate supporting documents, but does not address the length and content of those documents. *See* GeoTag Mot., 3. For example, nine of the documents are of two pages or less in length (Business Wire 2, Emigh, Business Wire 3, J. Mills, Business Week, Taking in the Sites, Internet Ready Reference Resources[1], D. Fay e-mail of Oct.

---

[1] This document is four pages long, but only one paragraph in the document is devoted to the NYNEX system.

4

4, 1995, and the NYNEX Inside reference). Therefore over a third of the documents cited by Classified in support of this system can be reviewed with minimal effort. The remaining documents are longer than two pages, but in many cases are not substantively dense documents. For example, the March 30, 1995 Presentation, the NYEYP Presentation, and NIT Presentation are documents are 37 page, 30 page, and 5 page slideshows, respectively. Due to their nature as slideshows, the amount of information contained therein is substantially less than in a full text document of equivalent length. Three of the documents are related versions of a business case plan that range from 30 pages to 75 pages, but contain substantial overlap. The remaining documents are a 3-page press release, a 17-page CTL Network document, a 52-page document describing the underlying Prodigy system on which the NYNEX system was made available to the public, a price sheet, and a 51 page slide deck regarding the system.

  Classified Ventures respectfully submits that the review of these documents, taken together, does not present an unduly burdensome task for GeoTag, especially in view of the 591 pages of infringement charts served by GeoTag on Classified that Classified is currently analyzing and drafting a response to meet its own obligations under the Local Patent Rules. Nonetheless, Classified is mindful of the Court's instruction to revisit these charts, and has no intention of providing needless citations to these documents in the body of the claim chart where Classified relies on them to show facts other than the recited claim language, such as date of introduction, operation of predecessor systems to show how the NYNEX system evolved, or that it would have been obvious to a person of ordinary skill in the art or the creators of the NYNEX system to modify what was in public use to render the asserted claims obvious. To that end, Classified has prepared a more streamlined chart for the NYNEX system that relies on only <u>nine</u> documents, which is intended to reduce redundancy, on the basis that this will reduce the number of references GeoTag is required to chart in its responsive paper. (Exh. H). Classified does not

5

object to substitution of this chart for its previous chart provided it does not waive Classified's ability to rely on the non-charted documents to establish facts other than whether the NYNEX system contained the claimed features, e.g., dates of public use.

### B. Superpages

As with the NYNEX system, GeoTag's arguments with respect to the SuperPages system rely on the number of documents without regard to the length or content of those documents. *See* GeoTag Mot., 3-4. Here, Classified has cited to nine documents and three deposition transcripts. Only one of these documents, the GTE SuperPages brochure, is longer than four pages, and it is a piece of advertising material with screen shots and graphics, with text mostly confined to bullet points and single paragraphs. The remaining documents include: (1) a press release showing the date of operation (4 pages); (2) a fact sheet (1 page); (3) three research proposals totaling 6 pages; (4) a single page screen shot depicting the SuperPages search form; (5) a GTE Labs document (23 pages); and (6) three deposition transcripts from a case brought by GeoTag's predecessor-in-interest. Again, Classified respectfully submits that this is not an unreasonable accumulation of documentation in view of the requirements of the local rules and the length of the charts served on it by GeoTag.

### C. The CoBase system

GeoTag argues that Classified's counting of the CoBase system as one of its 25 references separately from each of the two articles it relies on to show the operation of that system is an indication that the documents supporting the other systems should also be independently counted. *See* GeoTag Mot., 4. This argument misunderstands the purpose for which Classified relies on these documents. Unlike the prior art systems discussed above, Classified relies on each of the two CoBase articles as independent pieces of prior art, qualifying as such because they are printed publications published during the prior art period. This status

imparts independent legal significance to these documents, and it is Classified's contention that the documents themselves teach all the claimed features of the GeoTag patent. In addition, Classified also contends that the CoBase system invalidates GeoTag's claims as a public use or invention known to others. As such, Classified has relied on the two articles to show the operation of the system, and has therefore used three of its 25 prior art reference slots on CoBase, even though there are only two published CoBase articles.

As this Court explained in the *Engate* case in response to a plaintiff's argument that a prior art system could not invalidate its patent claims because none of the supporting documents alone taught all elements of its claims:

> If the Court were concluding that Claim 5 is invalid because it was anticipated by a printed publication, Engate would be correct that the publication would have to include — either explicitly or inherently — every element of the claim. However, the basis for our conclusion that Claim 5 is invalid is that the technology described in the claim was in public use prior to the critical date. The Court cites the articles as evidentiary support for what technology was in use in the CICs, not as an independent ground for finding the claim invalid.

*Engate*, 331 F. Supp. 2d 688. Here, Classified *does* contend that the two CoBase articles include every element of GeoTag's claims, and therefore listed them separately as prior art references, each counting toward the total of 25. But that does not mean Classified should not be able to also rely on the public use of the system itself as an invalidating reference by showing how it worked with reference to the other two printed publications.

### D. City.Net, Find It 511, and Yahoo!

GeoTag further complains of Classified's reliance on the City.Net, Find It 511, and Yahoo! Search Engine systems. In support of the Find It 511 system, Classified cites only two 1-page articles. For City.Net, Classified cites four documents totaling five pages plus 28 pages of screenshots of the system. And for the Yahoo! Search Engine, Classified cites to two

7

references: one article and a book. Classified submits that GeoTag has made no showing that it would be unduly burdensome to respond to Classified's charts on these references or cited to any authority for the proposition that Classified should not be allowed to rely on more than one document to show the operation of these systems.

### III. CONCLUSION

In view of the foregoing argument and Classified's reduction in the number of citations in the claim charts in question, the Court should deny GeoTag's motion to strike Classified's Invalidity Contentions.

Dated: February 4, 2014　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　By: /s/Scott A. Sanderson
　　　　　　　　　　　　　　　　　　　　　Thomas L. Duston
　　　　　　　　　　　　　　　　　　　　　 tduston@marshallip.com
　　　　　　　　　　　　　　　　　　　　　Scott A. Sanderson
　　　　　　　　　　　　　　　　　　　　　 ssanderson@marshallip.com
　　　　　　　　　　　　　　　　　　　　　MARSHALL, GERSTEIN & BORUN LLP
　　　　　　　　　　　　　　　　　　　　　233 South Wacker Drive
　　　　　　　　　　　　　　　　　　　　　6300 Willis Tower
　　　　　　　　　　　　　　　　　　　　　Chicago, IL 60606-6357
　　　　　　　　　　　　　　　　　　　　　T: 312.474.6300

　　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　Classified Ventures, LLC

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on February 4, 2014, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s/ Scott A. Sanderson
Scott A. Sanderson